UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**CLETUS J. TOBE, III**                                Case Number 3:13 CV 1046

    Plaintiff,                                         Judge James G. Carr

    v.                                                    REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.                                          Magistrate Judge James R. Knepp II

### INTRODUCTION

Plaintiff Cletus J. Tobe, III filed a Complaint (Doc. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 1383(c)(3) and 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated May 8, 2013). For the reasons stated below, the undersigned recommends the Commissioner's decision be remanded in part and affirmed in part.

### PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on April 21, 2010, alleging a disability onset date of June 13, 2009, due to hearing loss. (Tr. 142-45, 168, 172). However, Plaintiff was diagnosed with human immunodeficiency virus (HIV) on May 25, 2010, and updated his disability forms accordingly. (Tr. 178, 717). He also alleged new impairments of depression and headaches. (Tr. 177). His claim was denied initially and on reconsideration. (Tr. 79-97). Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 98). On March 9, 2012, Plaintiff

1

(represented by counsel) and a vocational expert (VE) testified at the hearing, after which the ALJ found Plaintiff not disabled. (*See* Tr. 18, 37-78). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 416.1455, 416.1481. On May 14, 2013, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

### Vocational History and Background

Plaintiff was 26 years on the date of the ALJ hearing. (Tr. 169).[1] He graduated high school and attended college for three years. (Tr. 169). Plaintiff has past relevant work experience as a high school basketball coach and salesperson in a retail clothing store. (Tr. 170). Plaintiff also worked part-time at a tanning salon and as a restaurant host during the alleged onset period. (Tr. 169, 911-12).

Plaintiff said HIV precluded him from work because of fatigue and depression. (Tr. 913-14).  He also said he suffered from severe headaches and broke out in shingles every few months for about four weeks at a time. (Tr. 916, 932). Plaintiff said he was completely deaf in his left ear and had problems hearing in his right. (Tr. 914-15). Plaintiff indicated he stopped auditory treatment because his hearing loss had "stabilized" and he could not afford hearing aids. (Tr. 919-20).

Concerning daily activity, Plaintiff was essentially unlimited. He drove, shopped, cooked, did dishes, and worked part-time at a tanning salon. (Tr. 911-12). He visited his mother at work, took care of his dog, babysat his niece, went to movies, watched sports, wrote, read books, visited friends and family, and went out two eat at least once a week. (Tr. 929-31, 934-36).

---

1. The case transcript ("Tr.") is located at ECF Doc. 15; however, the ALJ hearing transcript was corrected to reflect missing testimony and updated at ECF Doc. 22. Thus, references to Tr. 904-45 (the updated ALJ hearing transcript) are located in ECF Doc. 22, all other transcript references are located in ECF Doc. 15.

However, Plaintiff said he was "tired constantly" and at times "[could not] do anything." (Tr. 913-14). He also indicated that he could not function when he broke out with shingles. (Tr. 932-34).

**Medical Evidence**

Directly prior to and during his alleged onset date, Plaintiff had a "strong history of viral throat infections, strep throat, and mono[neucleosis]." (Tr. 291-97). Around 2008, he began experiencing hearing loss in his left ear. (Tr. 291-95). On August 6, 2009, Plaintiff went to Reid Hospital (Reid) complaining of complete hearing loss in his left hear. (Tr. 291). Later that week, Plaintiff underwent an MRI, which was normal except for enhancement within the internal auditory canals, greater in the left ear. (Tr. 287-88). On September 2, 2009, treatment notes indicated he had bilateral sensorineural hearing loss, which began after a tonsil infection. (Tr. 307).

In August 2009, Plaintiff also sought treatment at Reid for hematuria (bloody urine). (Tr. 289). He was prescribed medication and told to follow up with a urologist if his condition worsened. (Tr. 289). In September 2009, Plaintiff returned to Reid for a tonsillectomy to address recurrent tonsillitis. (Tr. 309-11).

In July 2009 and June 2010, Jerry L. House, M.D., found Plaintiff would benefit from hearing aids and diagnosed "bilateral progressive [hearing] loss of uncertain etiology." (Tr. 313-14, 316, 329). His opinion was based on hearing tests, an MRI, and Plaintiff's response to oral medication. (Tr. 314, 316). Dr. House thought Plaintiff's hearing loss was related to a "viral inflammation" and noted Plaintiff's condition was "certainly a puzzling case." (Tr. 316). Dr. House also informed Plaintiff his "odds for recovery of hearing in the left ear [were] not good."

3

(Tr. 316). However, Dr. House noted Plaintiff could hear "quite well" without an aid in his right ear.

In May 2010, Plaintiff tested positive for HIV. (Tr. 717). On August 2, 2010, Plaintiff saw Kaili Fan, M.D., and reported an occasional rash on his arms, hands, buttocks, and upper thighs. (Tr. 415). At that time, the rash had improved. (*Id*.). Also during this time, he was diagnosed with herpes simplex virus (HSV) on his genitals, which partially resolved after a short course of oral Acyclovir. (Tr. 717). A few weeks later, he developed varicella zoster virus (VZV) on his face and vesicular lesions on his chin and lower cheeks. (Tr. 717). Again, these symptoms resolved after a short course of oral Acyclovir. (Tr. 663, 717). Both infections were confirmed by viral cultures. (Tr. 717). By late August 2010, Plaintiff had no apparent rash or lesions. (Tr. 419, 421).

On September 7, 2010, Plaintiff saw neurology specialist Bradley Jacobs, M.D., for "headaches, dizziness, and deafness." (Tr. 351-53). Dr. Jacobs noted Plaintiff had been diagnosed with HIV around May 2010. (Tr. 351). Plaintiff tested positive for shingles, although his symptoms had "significantly improved" with Acyclovir. (Tr. 351). Dr. Jacobs recommended a reevaluation of Plaintiff's ears, nose, and throat "given the fact they had not been aware of his HIV status previously." (Tr. 352).

On November 4, 2010, Plaintiff saw Dr. Fan for decreased hearing in both ears and dizziness. (Tr. 362). Dr. Fan noted Plaintiff's hearing loss at this point was "likely stable" but scheduled a series of auditory tests. (Tr. 364). Plaintiff followed up the next week and Dr. Fan recommended a follow up audiogram and hearing aid trial. (Tr. 368-70).

On December 5, 2010, psychologist Stephen W. Emerick, Ph.D., authored a letter to Attorney Peter von Meister describing Plaintiff's emotional reaction to the alleged unauthorized

4

dissemination of his positive HIV status. (Tr. 372-81). His letter also explained Plaintiff's mental status examination results, including a constricted range of emotions, with some flat affect. (Tr. 375). There was some suicidal ideation present but his concentration was good, thought coherent, and he had no flight of ideas. (Tr. 375). Plaintiff was very distraught, depressed, and hopeless over his HIV positive status. (Tr. 372-81). Dr. Emerick diagnosed major depressive disorder, severe, and anxiety disorder, NOS, and assigned a global assessment of functioning (GAF) score between 40-50.[2] (Tr. 378).

Plaintiff treated consistently with Dr. Emerick throughout 2011. (537-78). Generally, Plaintiff discussed frustration with his positive HIV status, a pending lawsuit, and his disability application. (Tr. 540-78). In November 2011, Plaintiff began jogging and eating healthy. (Tr. 540). He had also joined Grinder, a social networking website, and was practicing safe sex. (Tr. 543). On December 29, 2011, Dr. Emerick's treatment notes indicated Plaintiff had gone out for the first time in a year. (Tr. 537). However, Plaintiff also reported he started breaking out in shingles all over his body. (Tr. 537).

On November 6, 2010, Dr. Emerick referred Plaintiff to Alex B. Caldwell, Ph.D., for mental health testing. (Tr. 595-600). Dr. Caldwell found Plaintiff's testing profile suggested a mild to moderate suicide risk and severe depression but that he would benefit from counseling. (Tr. 596, 598-99).

In February 2011, Plaintiff developed a perirectal skin rash preceded by flu-like symptoms. (Tr. 684). A few perirectal lesions were still present in March 2011, despite a round

---

2. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning.  American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32–33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score between 40 and 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *DSM-IV-TR*, at 34.

of oral Acyclovir. (Tr. 684-86). The lesions had been on Plaintiff's buttocks for two months at this point. (Tr. 689). In April 2011, Plaintiff was diagnosed with anal condyloma and an inflamed fistula tract. (Tr. 605, 607). The fistula was removed on April 28, 2011 resulting in a normal proctology examination by September 21, 2011. (Tr. 605, 614).

In May 2011, Plaintiff reported he had no new lesions or rectal pain. Plaintiff reported he had not been exercising regularly but could "play tennis for several hours." (Tr. 697). Plaintiff reported he was working at a tanning salon part-time. (Tr. 697).

In August 2011, Plaintiff returned to Dr. Fan and reported he was doing well, played tennis a "couple times a week", and worked part-time. (Tr. 706). He reported no lesions, rashes, or shingles. (Tr. 706).

On August 23, 2011, Plaintiff brought disability paperwork for Dr. Fan to complete. (Tr. 708). In response, Dr. Fan said "I have told [Plaintiff] and his mother . . . I do not believe he is disabled from his chronic HIV infection, as the infection is well controlled and [] he is doing well clinically, but they mentioned [] this is just a formality and that I need to fill out paperwork, which I did later. . . . I did tell [Plaintiff] I did not want to get involved in any of his legal activities." (Tr. 708-09).

In November 2011, Plaintiff returned to Dr. Fan with complaints of "white spots" on his face, legs, and back, which Plaintiff believed was a fungal infection related to tanning. (Tr. 717). Plaintiff reported he was doing well, working out regularly, and still working part-time at the tanning salon. (Tr. 717). His mother, also present, reported Plaintiff had "started working in her restaurant." (Tr. 717). Dr. Fan referred Plaintiff to dermatology. (Tr. 720). Despite reporting severe depression, Dr. Fan noted that Plaintiff "appear[ed] in a normal mood, with no apparent sign of depression." (Tr. 721).

On January 24, 2012, Dr. Fan filled out a check-the-box HIV Medical Assessment Form. (Tr. 778). Dr. Fan listed Plaintiff's diagnoses of HSV, skin lesions, fatigue, diarrhea, skin rash, syphilis, and hearing loss. (Tr. 778-79). Dr. Fan declined to opine on Plaintiff's functional limitations as he was "currently working part time." (Tr. 782-83). She recommended a formal disability evaluation instead. (Tr. 783).

**State Agency Opinion Evidence**

On June 16, 2010, Anthony F. Hammond, M.D., reviewed the medical evidence and found Plaintiff "should be able to hear and understand clearly spoken instructions given face-to-face in a quiet environment." (Tr. 341). Dr. Hammond found Plaintiff was essentially unlimited, except he must avoid work areas with auditory safety signals. (Tr. 341).

On February 16, 2011, Tonnie Hoyle, Psy.D., prepared a psychiatric review technique and residual functional capacity (RFC) assessment. (Tr. 477-80). Dr. Hoyle found Plaintiff was not significantly limited in the categories of understanding and memory, sustained concentration and persistence, social interaction, and adaptation, except he was moderately limited in his ability to complete a normal workday and workweek without interruption or perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 477-78). He was also moderately limited in his abilities to interact appropriately with the general public, get along with coworkers without distracting them, and respond appropriately to changes in a work setting. (Tr. 478). Dr. Hoyle noted Plaintiff would be able to perform work with limited, superficial contact with others in a relatively static environment. (Tr. 479).

William Bolz, M.D., prepared a physical RFC assessment on February 25, 2011. (Tr. 481-88). Dr. Bolz found Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, and sit, stand, and/or walk for about six hours in an eight-hour work day. (Tr. 482). Based on

7

hearing loss, Plaintiff must be given instructions face-to-face in a quiet environment and must avoid work areas with auditory safety signals. (Tr. 485).

**ALJ Decision**

On March 29, 2012, the ALJ found Plaintiff had the severe impairments of HIV positive, bilateral hearing loss, tinnitus, depression, and anxiety but did not meet a listing and was able to perform work in the economy. (Tr. 18-31). Specifically, the ALJ found Plaintiff did not meet or equal the level of severity required for listing 14.08, HIV infection. (Tr. 24).

The ALJ then determined Plaintiff had the RFC to perform light work subject to the following limitations: no climbing ropes, ladders, or scaffolds; no balancing; no exposure to hazards; must not be required to maintain concentration on a single task for longer than fifteen minutes at a time; no work in a loud noise environment; and no work in areas with auditory safety signals. (Tr. 26). Based on VE testimony, the ALJ determined Plaintiff was capable of performing work as a cleaner, packager, laundry folder, assembler, inspector, and document preparer. (Tr. 30).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r*

*of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age,

9

education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff asserts the ALJ erred for a variety of reasons: 1) he failed to find Plaintiff's headaches and fatigue severe impairments; 2) he failed to find Plaintiff met or equaled listing 14.08, HIV Infection; 3) he disregarded the opinions of Drs. Fan, Emerick, and Caldwell; and 4) he improperly assessed Plaintiff's RFC and credibility. (Doc. 18).

### **Step Two – Severe Impairments**

Plaintiff argues the ALJ erred by not including Plaintiff's headaches and fatigue among his severe impairments. However, as the Commissioner points out, because the ALJ found Plaintiff suffered from other severe impairments, it was irrelevant whether he considered Plaintiff's headaches and fatigue severe. 20 C.F.R. § 416.920(c) (relevant inquiry at step two is whether "you do not have *any*" severe impairments (emphasis added)); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576-77 (6th Cir. 2009).

The regulations do not require the ALJ to designate each impairment as "severe" or "non-severe"; rather, the determination at step two is merely a threshold inquiry. 20 C.F.R. § 404.1520(a)(4)(ii). "After an ALJ makes a finding of severity as to even one impairment, the ALJ 'must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" *Nejat*, 359 F. App'x at 576 (quoting SSR 96-8p, 1996 WL 374184, at *5). In other words, if a claimant has at least one severe impairment, the ALJ must continue the disability evaluation and consider all the limitations caused by the claimant's

impairments, severe or not. And when an ALJ considers all a claimant's impairments in the remaining steps of the disability determination, the failure to find additional severe impairments does not constitute reversible error. *Nejat*, 359 F. App'x at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

Here, the ALJ considered Plaintiff's headaches and fatigue when he determined Plaintiff's RFC, but found these impairments were not severe because Plaintiff was capable of working part-time. (Tr. 27-28). Consistent with the ALJ's decision, substantial evidence shows Plaintiff was able to play tennis a few times a week, exercise, work at a tanning salon, and work at his mother's restaurant. Because the ALJ found Plaintiff suffers from severe impairments and considered Plaintiff's headaches and fatigue in the remaining steps of his disability determination, any failure to find these impairments severe does not constitute reversible error. *See Nejat*, 359 F. App'x at 577.

**Step Three – Listing 14.08**

Plaintiff argues the ALJ erred at step three because he failed to evaluate Plaintiff's HIV status and "constant lesions/shingles that occur all over his body with some lesions lasting for over four weeks" in conjunction with listing 14.08, HIV Infection. (Doc. 18 at 5).

In turn, the Commissioner argues Plaintiff's HSV and VZV infections did not raise Plaintiff's HIV status to the listing level because the infections were short-lived, localized, and responsive to treatment. (Doc. 20, at 9).

While the Court tends to agree with the Commissioner; it must remand because the ALJ failed to evaluate Plaintiff's symptoms in relation to those described in the listing, and he did not articulate his reasons for finding Plaintiff's symptoms did not meet or equal the listing criteria. *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, *6, 10 (E.D. Mich.) (remand when

11

the ALJ failed to discuss the plaintiff's physical impairments in relation to listing 14.08); *see also Isaac v. Comm'r of Soc. Sec.*, 2013 WL 4042617, *9-10 (E.D. Mich) (no error when the ALJ briefly noted that the plaintiff's bacterial, fungal, and viral infections did not meet listing 14.08 because the infections responded to medical treatment).

Listing 14.08 requires documentation of HIV infection plus, pertinent here, certain specified viral infections, including HSV and herpes zoster (or VZV), in particular cases. 20 C.F.R. Part 404, Subpt. P, App. 1, at §14.08. To meet the listing for HIV with HSV, the herpes must cause one of the following: (a) a mucocutaneous (such as oral) infection lasting for one month or longer; (b) infection at a site other than the skin or mucous membranes, such as bronchitis; or (c) disseminated (widespread) infection. *Id*. at § 14.08D(2). Similarly, to meet the listing for VSV, the VSV must be (a) disseminated; or (b) with multidermatomal eruptions that are resistant to treatment. *Id*. at § 14.08(D)(3).

While there is no "heightened articulation standard" in considering the listing of impairments, a reviewing court must find an ALJ's decision contains "sufficient analysis to allow for meaningful judicial review of the listing impairment decision." *Snoke v. Astrue*, 2012 WL 568986, at *6 (S.D. Ohio 2012) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)); *see also May*, 2011 WL 3490186, at *7 ("In order to conduct a meaningful review, the ALJ's written decision must make sufficiently clear the reasons for his decision."). A court may look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis. *Snoke*, 2012 WL 568986, at *6 (citing *Bledsoe*, 165 F. App'x at 411).

Here, Plaintiff presented with both HSV and VZV, with record evidence indicating his HSV infections many have lasted longer than a month. (*See* Tr. 605, 607, 684-89). Despite this evidence, and Plaintiff's testimony that he suffered from shingles for extended periods, the ALJ

merely stated "the severity of the claimant's impairments does not meet or equal … 14.08", without any further discussion or analysis of HSV or VZV anywhere in the opinion. (Tr. 24). Thus, the Court is unaware if the ALJ considered Plaintiff's HSV and VZV infections in relation to those described in listing 14.08, which clearly does not allow for meaningful judicial review. Accordingly, remand is appropriate for analysis consistent with this recommendation.

**Treating Physician Rule**

Generally, the medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

An ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 404.927(c). In determining how much weight to afford a particular opinion, an ALJ must consider: (1) examining relationship; (2) treatment relationship – length, frequency, nature and extent; (3) supportability; (4) consistency; and (5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

In addition, even if the treating physician's opinion is not entitled to "controlling weight," there is nevertheless a rebuttable presumption that it deserves "great deference" from the ALJ. *Rogers*, 486 F.3d at 242. Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. Failure to do so requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409-10 (6th Cir. 2009).

Good reasons are required even when the conclusion of the ALJ may be justified based on the record as a whole. The reason-giving requirement exists, in part, to let claimants understand the disposition of their cases, particularly in cases where a claimant knows her physician has deemed her disabled and might be bewildered when told by an ALJ she is not, unless some reason for the agency's decision is supplied. *Wilson*, 378 F.3d at 544 (quotations omitted). "The requirement also ensures the ALJ applied the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.*

**Drs. Emerick and Caldwell**

Plaintiff argues the ALJ failed to consider Dr. Emerick's GAF score between 40 and 50, and the results of Dr. Caldwell's personality study. (Doc. 18, at 6). The Commissioner counters that the ALJ's opinion was supported by substantial evidence.[3]

A GAF score between 40 and 50 indicates severe symptoms. The ALJ noted that while Plaintiff's "treating psychologist [] reported fairly severe symptoms, his mental status exam was fairly normal." (Tr. 28). The ALJ went on to explain that this opinion was internally unsupported

---

3. Unfortunately, the Commissioner fails to address the ALJ's treatment, or lack thereof, of Dr. Caldwell's opinion.

14

and inconsistent with other evidence in the record. (Tr. 28). Thus, the ALJ discussed several of the required regulatory factors and found this opinion was not controlling.

Problematic, however, is the ALJ's treatment of Dr. Caldwell's report from which Dr. Emerick's symptom severity opinion plausibly stems. The report clearly indicates Plaintiff suffers from severe depression and suicidal ideation. (Tr. 595-600). Nevertheless, it was not addressed by the ALJ. While Dr. Caldwell is not a treating physician and not entitled to controlling weight, his opinion is relevant, and the ALJ was required to provide some reasoning for discounting it, especially given its relation to the treating psychologist's opinion. Therefore, the Court suggests remanding for further analysis of Dr. Caldwell's report.

**Dr. Fan**

Plaintiff argues the ALJ failed to address Dr. Fan's opinion regarding Plaintiff's HIV diagnosis and complications therefrom. (Doc. 18, at 8-9). Plaintiff is correct that there is simply no mention of Dr. Fan in the ALJ's opinion. However, Dr. Fan clearly opined she did not believe Plaintiff was disabled as a result of his HIV status. (Tr. 708-09). Indeed, Dr. Fan explicitly stated, "I do not believe [Plaintiff] is disabled from his chronic HIV infection, as the infection is well controlled[.]" (Tr. 708-09). Moreover, Dr. Fan declined to opine on Plaintiff's functional limitations because he was working part-time. (Tr. 782-83). Given the ALJ's errors elsewhere in the opinion, the failure to mention Dr. Fan's opinion cannot be considered harmless. Accordingly, the Court recommends remanding so the ALJ can appropriately address Dr. Fan's opinion.

**RFC and Credibility Finding**

Because the Court recommends remanding based on the ALJ's failure to address Plaintiff's HSV and VZV in conjunction with listing 14.08, and his treatment of certain medical

15

opinions, it would be premature to make a finding on the ALJ's credibility and RFC determinations, as the ALJ's analysis of the same may change based on this recommendation.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying SSI benefits is not supported by substantial evidence and recommends that the matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this recommendation.

      s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).